MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 82
Docket:        Cum-24-101
Argued:        October 8, 2024
Decided:       December 31, 2024

Panel:         STANFILL, C.J., HORTON, CONNORS, and DOUGLAS, JJ.

CAMPBELL CLEGG et al.

v.

AMERICAN AIRLINES, INC.

CONNORS, J.

[¶1]  The question presented in this appeal is what relief, if any, airline passengers may obtain when an airline precludes their travel without explanation.

[¶2]  Campbell and Jennie Clegg appeal from a judgment of the Superior Court (Cumberland County, *MG Kennedy, J.*) granting the motion of American Airlines, Inc., for summary judgment on the Cleggs' claims for breach of contract (Count 1), fraud (Count 2), and breach of the Maine Unfair Trade Practices Act, 5 M.R.S. § 213(1) (2024) (Count 3) on the basis that the Cleggs' claims are preempted under the Airline Deregulation Act.  *See* M. R. Civ. P. 56; 49 U.S.C.A. § 41713(b)(1) (Westlaw through Pub. L. No. 118-107).  We vacate the judgment because we conclude that while relief is limited, it is not totally foreclosed: the

2

Cleggs may have a breach of contract claim that is not preempted because it is based on American's Conditions of Carriage, with damages limited to "a full amount of the ticket and any extras" for their curtailed travel.

## I. BACKGROUND

### A.    The Undisputed Facts

[¶3]  The facts, as set out in the parties' supported statements of material facts and viewed in the light most favorable to the Cleggs, *see Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307, are as follows.  In February 2022, the Cleggs purchased from American Airlines first-class round-trip tickets for themselves and three other members of their family for travel between Albany, New York, and San Francisco, California, departing in May 2022.  When they purchased the tickets, the Cleggs agreed to American's Conditions of Carriage, which formed a part of the contract for travel between the Cleggs and the Airline.  *See* 14 C.F.R. §§ 221.1-221.600, 253.1-253.10 (2024).

[¶4]  The Conditions of Carriage specified that "[t]o the extent not preempted by federal law, Texas law applies to this contract . . . ."  The conditions required passengers to check in "[a]t least 45 minutes before scheduled departure, for flights within the U.S."  A web page linked to the conditions titled "Check-in and arrival" recommended arriving at the airport at

least two hours before a flight "to allow plenty of time to check in." In a section titled "Involuntary refunds," the conditions stated:

> If you are due a refund because we failed to operate on schedule (a delay to your departure time of over 4 hours) or we refused to let you fly for reasons other than your violation of this contract, we will refund you . . . the full amount of the ticket and any extras if travel hasn't started.

Additionally, the conditions contained a "Limit of liability" provision that provided, "You agree we are not liable for special, consequential, indirect or incidental damages that arise from this agreement . . . ."

[¶5] The night before their flight, the Cleggs were unable to check in online because American's online check-in system did not permit them to complete the process online and instructed them to check in at the airport. The other three members of their party were able to check in online. On the morning of their flight, the Cleggs arrived at the airport at 4:47 a.m. and arrived at the ticket counter prior to 5:00 a.m. for their 6:04 a.m. scheduled departure. At the ticket counter, three different ticketing agents unsuccessfully attempted to check the Cleggs in for their flight. While the agents could see the reservation and that seats had been assigned to the Cleggs, American's computer system would not let the agents complete the check-in process. American never

4

resolved the issue, and the Cleggs were unable to check in before the cut-off time of forty-five minutes prior to the flight.

[¶6] The Cleggs then aver—and the Airline admitted for purposes of summary judgment—that based on recommendations and representations made by a gate agent, the Cleggs booked a flight from Boston, Massachusetts, to San Francisco on a different airline. When the Cleggs attempted to check in for their return flight from San Francisco on American, they learned that American had cancelled their flight because they did not board the original outbound flight. The Cleggs never received a refund for their outbound or return flights.

## B. The Procedural Background

[¶7] The Cleggs filed a three-count complaint against American in July 2022, alleging breach of contract, fraud, and breach of the Maine Unfair Trade Practices Act, 5 M.R.S. § 213(1). They sought actual, consequential, and punitive damages and their attorney fees.

[¶8] American moved for summary judgment as to the entirety of the Cleggs' claims, arguing that their claims were preempted under the Airline Deregulation Act. The court agreed, and the Cleggs timely appealed. *See* 14 M.R.S. § 1851 (2024); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

**A.  The Cleggs may pursue a claim only for a refund pursuant to the terms of the Conditions of Carriage.**

[¶9]  The Airline Deregulation Act  preempts states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C.A. § 41713(b)(1); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  When a dispute falls into one of these categories, the only avenue for and measure of relief is enforcement of the terms of the Conditions of Carriage.  *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29 (1995); *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 753-54 (Tex. 2003).[1]  Any state law avenue of relief outside that permitted under the Airline Deregulation Act is foreclosed under the Supremacy Clause of the United States Constitution, U.S. Const. art. 6, cl. 2.

[¶10]  The Cleggs argue that their claims are not preempted because their claims do not relate to rates, routes, or services.  But ticketing, check-in, and boarding procedures fall under the umbrella of "services."  *See Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 93-95, 98 (1st Cir. 2013) (holding that the

---

[1]  *Wolens* and its progeny stand for the proposition that the Airline Deregulation Act does not preempt self-imposed undertakings between the passenger and the airline, such as those reflected in the terms of the Conditions of Carriage.  *See Wolens*, 513 U.S. at 222, 233 (the act "allows room for court enforcement of contract terms set by the parties themselves" with "no enlargement or enhancement based on state laws or policies external to the agreement").

plaintiff's claims regarding the airline's failure at check-in and boarding to prevent the abduction of the plaintiff's children related to the airline's "services"); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 339 (5th Cir. 1995) (en banc) (allowing claims alleging wrongful exclusions from flights "would result in significant *de facto* regulation of the airlines' boarding practices"); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996) ("[T]he proper examination. . . is not why the airline refused to provide its services, but whether the claims at issue either expressly refer to the airline's services (which they clearly do) or would have a significant economic effect on the airline's services. The subjective motivations of [the airline's] employees are irrelevant to determining what constitutes 'services' within the meaning of the [Airline Deregulation Act]." (citation omitted)).[2]

[¶11]  Hence, the only non-preempted cause of action  for the Cleggs is enforcement of the terms of the Conditions of Carriage.  The conditions provide:

> If you are due a refund because we failed to operate on schedule (a delay to your departure time of over 4 hours) or we refused to let you fly for reasons other than your violation of this contract, we will refund you. . . [t]he full amount of the ticket and extras if travel hasn't started.

---

[2]  A refusal to allow boarding based on race or other discriminatory practices may or may not provide an exception to this rule, *see* 4 Federal Procedure, Lawyer's Edition § 7:822 (2024) (citing decisions), but the Cleggs have not alleged or produced evidence that the Airline's conduct was based on such a practice.

The Cleggs' claim alleges that because they were unable to check in and obtain transportation through no fault of their own, American breached the Conditions of Carriage by failing to provide what was bargained for under the agreement—transportation or a refund. Following the guidance of the Court in *Wolens*, enforcing this provision of the contract would hold the parties to the terms set by the parties themselves without enlargement or enhancement based on state law or policies, and thus the claim is not preempted by the Act.

[¶12]  The trial court read this provision of the Conditions of Carriage as indicating only "how much" could be refunded and accordingly concluded that the provision did not on its own obligate American to issue a refund under any particular circumstances.  The trial court held that the preceding provisions, including the section titled "Our responsibilities when there are schedule/operations changes," explained "when" American is obligated to issue a refund.  Nowhere else in the Conditions of Carriage, however, is there an explicit provision obligating American to render the bargained-for transportation or a refund.  Accordingly, to read the provision as only explaining "how much" American would be obligated to refund would permit American to opt not to perform its promises, making the contract illusory and unenforceable under Texas law.  *See City of The Colony v. N. Tex. Mun. Water*

*Dist.*, 272 S.W.3d 699, 725 (Tex. App. 2008) ("A contract that lacks mutuality of obligation is illusory and void and thus unenforceable.").

[¶13]  The Cleggs contend in both the complaint and at oral argument that the remedies for the breach of contract claim should include consequential damages and their costs associated with bringing the suit.  But enforcement of the Conditions of Carriage includes enforcement of its provision regarding the relief to which the Cleggs are entitled for a breach.  *See Wolens*, 513 U.S. at 229 ("A remedy confined to a contract's terms simply holds parties to their agreements. . . ."); *Norman v. Trans World Airlines, Inc.*, No. 98 Civ. 7419 (BSJ), 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000) ("[The] remedy for any breach of the contract of carriage between the parties is limited to the remedies set forth in that contract."); *Power Standards Lab, Inc. v. Fed. Express Corp*, 26 Cal. Rptr. 3d 202, 203-04, 207-08 (Cal. Ct. App. 2005) (holding that a breach of contract claim was preempted because the plaintiff sought a California common law form of attorney fees although the contract of carriage had specified only actual and compensatory damages).

[¶14]  Here, the Conditions of Carriage limit the remedies to "[t]he full amount of the ticket and any extras if travel hasn't started" or "the value of the unused tickets if the ticket is partially used."  Further, the "Limit of liability"

provision explicitly disclaims consequential damages. Because the *Wolens* exception requires the remedies to be limited to the contract's terms with no enlargement or enhancement based on state law, the Cleggs' recovery for breach of contract is limited to a refund, and the Airline Deregulation Act preempts and precludes recovery of consequential and punitive damages, attorney fees, and costs.

### III. CONCLUSION

[¶15] The facts viewed in the light most favorable to the Cleggs indicate that their claims are preempted under the Airline Deregulation Act except to the extent that they seek to enforce the terms of the Conditions of Carriage.[3]

The entry is:

> The judgment for American Airlines is vacated as to Count 1 to the extent that Count 1 seeks compensation for a breach of contract within the limits of liability contained in the Conditions of Carriage. The remainder of the judgment is affirmed. Remanded for further proceedings consistent with this opinion.

---

[3] In its brief and at oral argument, American alluded to its recommendation to arrive at the airport two hours early and suggested that it would have behooved the Cleggs to arrive for their flight earlier than 4:47 a.m. in order to give the agents more time to try to fix the computer glitch. We leave to the further proceedings on remand resolution of whether the terms of the parties' agreement required such conduct on the part of the Cleggs.

Lee H. Bals, Esq. (orally), and K. Blair Johnson, Esq., Marcus Clegg, Portland, for appellants Campbell Clegg and Jennie Clegg

Tory A. Weigand, Esq., and William N. Smart, Esq. (orally), Morrison Mahoney LLP, Boston, Massachusetts, for appellee American Airlines, Inc.

Cumberland County Superior Court docket number CV-2022-224
FOR CLERK REFERENCE ONLY